# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 1265 | **DATE** | 7/30/2003 |
| **CASE TITLE** | DAHMEN vs. SHEAHAN | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Defendant's motion for summary judgment is granted.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 31 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 66 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 JUL 31 PM 3:46 | | |
| DW | courtroom deputy's initials | FILED FOR DOCKETING Date/time received in central Clerk's Office 4:03 | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MARISELLA DAHMEN,

    Plaintiff,

v.

MICHAEL SHEAHAN, SHERIFF OF COOK COUNTY,

    Defendant.

No. 97 C 1265
Judge James B. Zagel



DOCKETED
JUL 3 1 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff Marisella Dahmen has brought suit against Cook County Sheriff Michael Sheahan alleging retaliation for her repeated complaints of sexual harassment in violation of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e-3(a). This was originally a multi-claim suit also involving allegations of sexual harassment, sexual discrimination, and discrimination based on national origin, but after granting in part Sheriff Sheahan's earlier motion to dismiss, the retaliation claim is all that remains. Sheriff Sheahan now moves for summary judgment on this remaining claim pursuant to Federal Rule of Civil Procedure 56(c).

Factual Background

Dahmen was employed as an Investigator at the Cook County Sheriff's Office, working in the Department of Community Supervision and Intervention. According to her, during March of 1995, she repeatedly complained to her Shift Supervisor Larry Spear about the sexual harassment conduct of co-worker Elbert Gant toward her, but Spear did nothing in response. Therefore, Dahmen complained to another supervisor, Chief Dennis Micnerski and additionally

requested a transfer to another shift. Micnerski denied this request saying there was nothing he could do. In response to her harassment complaints, Micnerski forbade Dahmen from going to Internal Affairs or to anyone else, including her husband, with her complaints and threatened to discipline her if she did so.

Several months later, Dahmen again complained to Spear about Gant's "continued" harassment, but Spear persisted in doing nothing to stop it. His only response consisted of telling her that it was her fault that Gant continued to berate her for reporting earlier harassment. Dahmen then contacted someone identified as Supervisor O'Malley and informed him of the situation. The next day, a meeting regarding the complaints was held that included Micnerski, Gant, Spear, and Dahmen. At the meeting, Dahmen handed Micnerski a memo relating the most recent events of harassment, and Micnerski assured her that he would forward the document to Internal Affairs. Dahmen claims that Micnerski did not do so.

Dahmen alleges that she subsequently continued to have problems with Chief Micnerski and that she next told this to Chief Odell Anderson, Micnerski's supervisor. After Anderson stated that he would talk with Micnerski, Dahmen responded that she feared Micnerski would attempt to retaliate. When Anderson inquired as to why she feared Micnerski, Dahmen responded that he had gotten "verbally loud" and angry with her on prior occasions for no reason. In addition, Dahmen claims to have had a conversation with someone identified as Chief Zavadin who informed Dahmen that it was well known that she was having problems with Micnerski because she had filed a sexual harassment lawsuit. Zavadin then advised her that it was in her best interest to remove herself from her shift, and, when Dahmen declined, replied, "Are you really sure? It would help eliminate the problems."

Dahmen alleges several ways in which Micnerski allegedly retaliated against her for complaining about harassment. These include:

- counseling her for absenteeism;
- requiring her to bring a doctor's statement every time she was absent;
- counseling her for using profanity in the workplace;
- reprimanding her for not answering a telephone in her office that someone had unplugged;
- threatening to suspend her for "having a bad temper;"
- ordering another investigator to never leave Dahmen in the office alone and to keep an eye on her because she was allegedly stealing documents;
- ordering her to leave the office during her lunch break;
- giving her a low employee evaluation score and then ignoring her questions as to the reasons for the poor evaluation;
- ordering her to submit a memo explaining her tardiness one day but then dropping the order upon Dahmen's request for the Union Steward;
- threatening to issue a written reprimand against her when he discovered that a telephone in her office had been moved to a computer room;
- generally intimidating and yelling at her;
- constantly walking by her desk;
- frequently standing behind her desk as she worked; and
- constantly asking the supervisors where she was if she was not in the office.

A letter from Dahmen's counsel, dated November 21, 1995, alleging discrimination based upon sex and national origin was filed with the U.S. Equal Employment Opportunity Commission (EEOC) on November 22, 1994. On August 28, 1996, Charge of Discrimination No. 210960645, alleging discrimination based on sex and national origin and retaliation was filed with the EEOC. Dahmen filed her First Amended Complaint against Sheriff Sheahan on June 19, 1997. Dahmen alleges that the retaliation continued after this filing when she submitted a memo relating to a denial of an opportunity to work overtime, which she, as the most senior person on duty, should have received instead of the person for whom overtime was approved. When Dahmen asked Supervisor Yolanda Ortega why the less senior was granted overtime

instead of her, Ortega inquired of someone identified as Watch Commander Gallacher who responded that it was because of Dahmen's "situation."

In response to Dahmen's Amended Complaint, Sheriff Sheahan filed a Motion to Dismiss, which I granted in part and denied in part. I later clarified that the September Order resulted in the dismissal of Dahmen's claims of sexual harassment, sexual discrimination, and discrimination based on national origin, thereby leaving the remaining claim of retaliation for complaining about sexual harassment. Dahmen subsequently filed her Second Amended Complaint against Sheriff Sheahan on May 21, 1998.

On August 12, 1998, the Sheriff's Office filed a complaint with the Cook County Sheriff's Merit Board seeking Dahmen's termination and charging her with violating rules and regulations regarding sexual harassment and conduct unbecoming sheriff's personnel. The complaint alleged that Dahmen violated the rules of her employment based on her conduct on April 29, 1998 and also based on a pattern of her conduct beginning in 1993 and continuing through 1998. After an evidentiary hearing, the Merit Board issued an order dismissing Dahmen for cause for violating general orders on five separate occasions which prohibited sexual harassment and conduct unbecoming an officer. On February 20, 2000, Dahmen filed a complaint for administrative review on the ground that the Merit Board's decision was against the manifest weight of the evidence or, in the alternative, too severe thus necessitating reduction. On March 21, 2001, the Circuit Court of Cook County affirmed the decision. On August 9, 2001, Dahmen appealed the decision, but the Appellate Court affirmed the decision as well.

Meanwhile, on January 20, 1999, Dahmen filed her third and final Amended Complaint, which alleges that the filing of the complaint by the Sheriff's Office seeking her termination was

4

yet another act of retaliation against her. She also alleges various other incidents of retaliation against her for filing charges of harassment, which have been described above.

Standard of Review

Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In considering a motion for summary judgment, I must construe facts in the light most favorable to Dahmen and draw reasonable inferences in her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of fact "exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999). Dahmen bears the burden of bringing forward specific facts showing that a triable issue exists and "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. I am required to grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Tatalovich v. City of Superior*, 904 F.2d 1135, 1139 (7th Cir. 1990).

Analysis

Under Title VII of the Civil Rights Act of 1964, employers are forbidden from retaliating against an employee who has accused the employer of a violation of the Act. *See* 42 U.S.C. § 2000e-3(a); *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 751 (7th Cir. 2002). A plaintiff may prove

a claim of retaliation by utilizing either the direct method or indirect burden-shifting method set forth initially in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003); *see also Hilt-Dyson v. City of Chicago*, 282 F.3d 456 (7th Cir. 2002); *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640 (7th Cir.), *cert. den.*, 123 S.Ct. 79 (2002).

Direct Method

Under the direct method, a plaintiff must produce sufficient evidence to demonstrate that the decision maker had retaliatory intent. *Rogers*, 320 F.3d at 754. Under this approach, a plaintiff may rely upon either direct evidence or upon circumstantial evidence. *Id.* Direct evidence of an employer's retaliatory intent usually amounts to an admission made by the decisionmaker. *Id.*; *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000) (stating that direct evidence "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus."). A plaintiff may also prove retaliation under the direct method by relying upon circumstantial evidence "that allows a jury to infer intentional discrimination by the decision-maker." *Rogers*, 320 F.3d at 753. Whether circumstantial evidence presented by a plaintiff is sufficient to withstand a motion for summary judgment depends upon "its strength in relation to whatever other evidence is in the case ." *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Although suspicious timing may constitute circumstantial evidence of retaliation, it is rarely sufficient, by itself, to create a triable issue on whether the employer retaliated against an employee for engaging in protected activity. *Stone*, 281 F.3d at 644 (collecting cases).

6

Here, Dahmen alleges direct or circumstantial evidence on the basis of three facts: (1) Gallacher's statement that Dahmen was passed over for overtime because of her "situation;" (2) the "suspicious nature" of the complaint filed by Sheriff Sheahan seeking her termination; and (3) the conversation between Zavadin and Dahmen, as testified to by Dahmen in her deposition, in which Zavadin informed Dahmen that it was well known that she was having problems with Micnerski because she filed a sexual harassment lawsuit. Regarding Gallacher's statement, it is unclear what his use of the word "situation" connotes. More importantly, it is clearly not a "smoking gun" that Dahmen was denied overtime because she had complained about harassment. There are other plausible explanations – i.e., a "situation" – which may justify Dahmen being passed over, namely her unsatisfactory job performance indicated by her ultimate termination for separate reasons. In addition, in the absence of further context, this statement is not sufficient enough to constitute circumstantial evidence of retaliation. Regarding the "suspicious nature" of Sheriff Sheahan's filing, this cannot be said to have been initiated solely in retaliation for Dahmen complaining about harassment because the arguments made in the complaint were ultimately found to have validity thus resulting in the Board issuing a termination order that has been affirmed by both a Circuit Court and an Appellate Court. Accordingly, this incident is neither direct nor circumstantial evidence of retaliation. Finally, regarding the alleged conversation between Zavadin and Dahmen, these are merely alleged hearsay statements made by Dahmen, and as such, they are not sufficient to create a genuine issue of fact. *Winskunas v. Birnbaum*, 23 F.3d 1264, 1268 (7th Cir. 1994) (hearsay incapable of creating a genuine issue of material fact).

Indirect Method

The "indirect method" of establishing a prima facie case of retaliation is governed by a four-part test in which a plaintiff must show: (1) that he engaged in a statutorily protected activity; (2) that he performed his job according to his employer's legitimate expectations; (3) that he suffered a materially adverse employment action; and (4) that he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Stone*, 281 F.3d at 644. Once a plaintiff has made this prima facie showing of retaliation, the defendant must come forward with a legitimate non-retaliatory reason for its action. If the defendant does so, "the *McDonnell Douglas* evidence forcing scheme falls out of the case." *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1399 (7th Cir. 1997). Dahmen must then present enough evidence showing a genuine issue of material fact that the defendant's reason is pretextual, *Stone*, 281 F.3d at 644, and "that the true reason was a [retaliatory] one," *Wallace*, 103 F.3d at 1399. In other words, she would then have to present evidence showing that Sheriff Sheahan's articulated reason for seeking her termination was phony, a mere pretext for retaliation. See *Cianci v. Pettibone*, 152 F.3d 723, 726 (7th Cir. 1998); *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir. 1997).

Here, Dahmen only alleges direct evidence of retaliation on the basis of the three aforementioned incidents – the comment regarding her "situation," the "suspicious timing" of the Sheriff's complaint, and her alleged conversation with Zavadin. Therefore, I presume that Dahmen intends to establish her case regarding all the remaining alleged instances of retaliation

8

by employing the indirect method of proof.[1] Along this line of analysis, Sheriff Sheahan argues that Dahmen cannot make a prima facie showing under the indirect method because she cannot show one or more of the following for each alleged instance of retaliation: (1) that she met the legitimate expectations of her employers; (2) that she suffered a materially adverse employment action; or (3) that she was treated less favorably than similarly situated employees who had not engaged in statutorily protected activity. I will address these arguments by examining each of the four categories of alleged retaliatory conduct, as categorized by Dahmen herself.

The first category of retaliation about which Dahmen complains relates to her complaint to Micnerski about Gant's harassment, Micnerski's subsequent failure to take those complaints to Internal Affairs, and his allowing Gant to continue harassing Dahmen. As to the claim that Micnerski did not report Dahmen's complaint to Internal Affairs, even if Dahmen did complain to Micnerski and he did not report the matter to Internal Affairs, Dahmen is unable to establish that she suffered "materially adverse change" in the terms and conditions of her employment because of this failure. *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) (citing *Crady v. Liberty Nat'l Bank & Trust Co.*, 933 F.2d 132, 136 (7th Cir. 1993)). Regarding the allegation that Micnerski allowed Gant to "continue" harassing Dahmen, her harassment claims against Gant were dismissed earlier and thus are not relevant to the surviving claim of retaliation. Dahmen relies on *Frazier v. Delco Electronics Corp.*, 263 F.3d

---

[1] Even if I am mistaken as to this presumption – in other words, if Dahmen claims that any other factual allegations constitute direct evidence of retaliation – summary judgment against Dahmen as to those factual allegations would nevertheless be appropriate because none falls within the "smoking gun" category of evidence which constitutes direct evidence of retaliation and because none is sufficient enough, in the context of all the other evidence, to constitute circumstantial evidence of retaliation.

663 (7th Cir. 2001), for the proposition that the alleged activity rose to the level of retaliation. However, in *Frazier*, there were numerous witnesses to the co-defendant's behavior, the behavior was repeated and egregious, it was substantiated that the plaintiff reported the activity, and the co-worker admitted his behavior. *Id.* at 665. Here, Dahmen's relies solely on her own personal statements to establish the alleged activity of Gant, activity which I have already found is not sufficient to maintain a separate claim for harassment against Gant.

Second, Dahmen claims that she suffered retaliation because Micnerski forbade her from complaining to Internal Affairs and threatened her with disciplinary action if she did so. Even assuming that this is true, it does not rise to the level of an adverse employment action. Dahmen cannot establishe that she suffered "materially adverse change" in the terms and conditions of employment because Micnerski was merely *threatening* to discipline her. As a result, Dahmen cannot establish any genuine issue of material fact for trial.

Third, Dahmen asserts that she suffered retaliation when Micnerski actually followed through on his threats to discipline Dahmen for continuing her complaints of sexual harassment by beginning a "campaign of intimidating and harassing conduct toward Dahmen." Although it is possible that the *actual* imposition of discipline – as opposed to the *threatened* imposition – may constitute adverse employment action, Dahmen's claim on this basis nonetheless fails because she has not shown that she was performing her job in a satisfactory manner in light of her eventual dismissal for violating general orders on numerous occasions which prohibited sexual harassment and conduct unbecoming an officer. To the contrary, she was not performing her job satisfactorily thus warranting Micnerski's alleged repeated disciplining of her.

Finally, Dahmen asserts that Sheriff Sheahan's pursuit of her termination is suspicious conduct establishing a prima facie case of retaliation. However, once again, Dahmen cannot

show that was performing her job in a satisfactory manner in relation to Sheriff Sheahan's filing of the complaint seeking her dismissal. Three separate entities – the Merit Board, Illinois Circuit Court, and Illinois Appellate Court – all found just cause to terminate Dahmen on the grounds that she violated general orders on numerous occasions which prohibited sexual harassment and conduct unbecoming an officer. Even, assuming arguendo, that Dahmen *could* establish a prima facie case of retaliation, Sheriff Sheahan articulates a legitimate non-discriminatory reason for filing the complaint, namely that she violated general orders on numerous occasions which prohibited sexual harassment and conduct unbecoming an officer, a finding affirmed by the Merit Board, the Circuit Court, and the Appellate Court.

In response, Dahmen has not offered sufficient evidence to establish that Sheriff Sheahan's proffered reason for filing the complaint was a pretext to conceal a retaliatory motive. As a general rule, "[t]he pretext inquiry focuses on the honesty – not the accuracy – of the employer's stated reason" for the conduct complained about. *Tincher v. Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1130 (7th Cir. 1997). In other words, even though Sheriff Sheahan's purported reason for seeking Dahmen's termination may be accurate (*i.e.*, that she had violated order prohibiting sexual harassment and engaged in conduct unbecoming an officer), this accuracy will not shield him from liability if the real reason for seeking her termination was the fact that she was complaining about harassment (*i.e.*, if his reason was retaliatory in nature). In other words, just because Sheriff Sheahan thought that the substance of the complaint seeking Dahmen's termination was true, this belief will not absolve him from liability if his actual motive for filing the complaint was her repeated complaints of harassment, including the filing of this suit.

Nevertheless, Dahmen fails to demonstrate any pretextual nature to the Sheriff's purported reason for seeking her termination. Indeed, since she is collaterally estopped from

11

challenging the accuracy of the charges of violating general orders on numerous occasions which prohibited sexual harassment and conduct unbecoming an officer, it difficult to conceive of what evidence Dahmen might produce to rebut this articulated reason for the Sheriff's conduct. She might rebut it with direct evidence of a retaliatory motive, but she has not. She might rebut it with circumstantial evidence of a retaliatory motive (*i.e.*, other actions taken by the Sheriff that show that his real motive for filing the complaint was retaliatory), but she has not. Finally, she might rebut it with evidence of other employees in her position – namely, those who similarly violated general orders on numerous occasions which prohibited sexual harassment and conduct unbecoming an officer – whose termination the Sheriff did not seek, but she has not. What she has done is point to the suspicious timing of the filing of the complaint, but, as discussed above, although suspicious timing may constitute circumstantial evidence of retaliation, it is rarely sufficient, by itself (as here), to create a triable issue on whether the employer retaliated against an employee for engaging in protected activity. *Stone*, 281 F.3d at 644 (collecting cases).

Accordingly, Sheriff Sheahan has articulated a legitimate non-discriminatory reason for his actions, which Dahmen fails to rebut as pretextual. What Dahmen seeks is an opportunity to present to the trier of fact a story, entirely unsupported by evidence, that Sheriff Sheahan began this process of seeking her termination not because of the now incontestable grounds for which she ultimately was terminated, but rather in retaliation for her repeated complaints of harassment. She is not entitled to present such a story here. Indeed, given the nature of some of the grounds for which her own termination was upheld – her own violation of orders prohibiting sexual harassment – Sheriff Sheahan had little choice but to seek her termination. In today's world, these are not matters on which sane public officials would exercise their discretion against seeking termination.

12

For the reasons above, Sheriff Sheahan's Motion for Summary Judgment is GRANTED.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: 30 July 2003